IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger

Civil Action No. 07-cv-00638-MSK-MJW

DORIS WATTS,

        Plaintiff,

v.

KARMICHAEL FAMILY, LLC, and
TEAM ASSET MANAGEMENT CORPORATION,

        Defendants.

_____

## OPINION AND ORDER DENYING MOTION FOR TEMPORARY RESTRAINING ORDER AND SETTING HEARING
_____

**THIS MATTER** comes before the Court pursuant to the Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction **(# 2)**.

### FACTS

According to the Complaint **(# 1)**, the Plaintiff is disabled, and therefore entitled to the protections of the Fair Housing Act, 42 U.S.C. § 3601 *et seq.* and to subsidized housing through the assistance of the Lakewood Housing Authority. On or about March 25, 2006, the Plaintiff entered into a lease with the Defendants to rent one of the Defendants' apartments. Beginning in April 2006, the Plaintiff complained to the Defendants concerning the sufficiency of a handicapped-reserved parking place for the Plaintiff, among other matters. The dispute over parking and other matters continued over the span of the following year. According to the Plaintiff, the result of her complaints has led to a deterioration in her relationship with the

1

Defendants, such that she is now singled out for adverse treatment by the Defendants and their staff on the basis of her disability and her complaining of the Defendants' alleged violations of her Fair Housing Act rights.

As particularly pertinent herein, the Plaintiff alleges that, on February 9, 2007, the Defendants served her with a notice to vacate her apartment on March 31, 2007. She seeks a temporary restraining order and preliminary injunction "restraining the Defendants . . . from preventing Plaintiff from occupying [the apartment], and from engaging in any other activities which would or would tend to result in interference or enjoyment of the Plaintiff's rights guaranteed under the Fair Housing Act."

## ANALYSIS

### A. Standard for granting injunctive relief

A request for a temporary restraining order under Fed. R. Civ. P. 65(b) is examined under the same standards applicable to a request for preliminary injunction under Rule 65(a). *See e.g. Duvall v. Keating*, 162 F.3d 1058, 1062 (10th Cir. 1998). The entry of a preliminary injunction is an extraordinary remedy. *See GTE Corp. v. Williams,* 731 F.2d 676, 678 (10th Cir. 1984). In order to obtain preliminary injunctive relief, the moving party must clearly and unequivocally demonstrate that there is:

> (1) substantial likelihood that the movant will eventually prevail on the merits; (2) a showing that the movant will suffer irreparable injury unless the injunction issues; (3) proof that the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) a showing that the injunction, if issued, would not be adverse to the public interest.

*See Autoskill Inc. v. National Educational Support Systems, Inc.,* 994 F.2d 1476, 1487 (10th Cir. 1993); *Greater Yellowstone Coalition v. Flowers*, 321 F.3d 1250, 1255-56 (10th Cir. 2003).  If the latter three factors "tip strongly" in the movant's favor, then "the test is modified, and the Plaintiff may meet the requirement for showing success on the merits by showing that questions going to the merits are so serious, substantial, difficult, and doubtful as to make the issue ripe for litigation and deserving of more deliberate investigation."  *Greater Yellowstone Coalition*, 321 F.3d at 1255-56.

The Court will assume, without necessarily finding, that the third, and fourth factors above are present here, and will focus upon only the likelihood of success and irreparable harm factors.

**B.  Likelihood of success**

A review of the exhibits attached to the Plaintiff's motion reveals that the term of the Plaintiff's lease with the Defendants ran from March 30, 2006 to March 31, 2007.  *Docket* # 2-8 at 1, ¶ 3.  Notably, the letter to the Plaintiff directing her to vacate the apartment expressly states that "your lease expires on March 31, 2007."  *Docket* # 2-5.  Although an attachment to the lease requires that the Defendants have specified grounds to terminate the lease "during the initial term" or "during any renewal term," *Docket* # 2-8 at 5-6, ¶ 7(b), it appears that the lease has expired by its terms and there is no obligation for the lessor to extend it..  Thus this is not a circumstance involving termination of the lease.

The Court notes that there is employment discrimination caselaw within the 10th Circuit that, inferentially, stands for the proposition that an employer's refusal to renew an expired employment agreement may be actionable if the refusal was the product of discriminatory animus, *see e.g. Minshall v. McGraw Hill Broadcasting Co.*, 323 F.3d 1273, 1280 (10th Cir. 2003) ("this

court is satisfied that Minshall offered sufficient evidence on which the jury could reasonably conclude McGraw-Hill's decision not to renew his contract was impermissibly based on his age"); *Cole v. Ruidoso Mun. Schools*, 43 F.3d 1373, 1380 (D.N.M. 1994) ("The district court determined that Cole established a prima facie case of gender discrimination under Title VII, and therefore the defendants were required to articulate a nondiscriminatory reason for not renewing her contract, . . . and we agree"). In addition, caselaw from outside this circuit for the same proposition under the Fair Housing Act, *see e.g. Tellock v. Davis*, 2002 WL 31433589 (E.D.N.Y. 2002) (unpublished) ("the Court recognizes that a landlord's refusal to renew a lease can give rise to a claim for housing discrimination based on race"); *Cavalieri-Conway v. L. Butterman & Assocs.*, 992 F.Supp. 995, 1005 (N.D. Ill. 1998) ("The court now turns to whether Defendants can produce a legitimate, non-discriminatory reason for their refusal to renew Cavalieri-Conway's lease"). However, the Plaintiff does not argue or cite authority for the proposition that the 10th Circuit recognizes that traditional principles of contract law are superseded by the non-discrimination purposes of the Fair Housing Act to supersede.

  Assuming, however, that it does, the analysis of whether the Plaintiff can establish a retaliatory refusal to renew her lease under the Fair Housing Act proceeds along a similar analysis as employment discrimination claims. *See Kormoczy v. United States Dept. of Hous. & Urban Dev.*, 53 F.3d 821, 823 (7th Cir.1995). To prove a claim of prohibited retaliation, the Plaintiff must show: (i) she engaged in protected opposition to Fair Housing Act discrimination; (2) she suffered an adverse action contemporaneous with or subsequent to such opposition; and (3) there is a causal connection between the protected activity and the adverse action. *See Cole*, 43 F.3d at 1381. The Defendants are then required to proffer a legitimate, non-retaliatory justification for

the non-renewal, and the Plaintiff has the burden of showing that justification to be pretextual. *Id.* at 1379.

The Court assumes, without necessarily finding, that the Plaintiff's various complaints about the availability of reserved parking spaces constitutes protected activity under the Fair Housing Act, and further assumes that the non-renewal of her lease constitutes an adverse action. Moreover, the Court assumes, without necessarily finding, that the Plaintiff is correct that her December 23, 2006 complaints about snow removal, rather than her earlier complaints about the lack of adequate reserved parking, constitutes the protected activity in this case. *Docket* # 2-2 at 9 ("It was not until Plaintiff complained about Defendants' snow removal policy[ ] that Defendant had any interest in terminating Plaintiff's tenancy"). Under such circumstances, the slightly less than seven-week delay between her protected activity and the Defendants' February 9, 2007 letter advising the Plaintiff that her lease would not be renewed may be sufficient, of itself, to permit an inference that the Defendants' actions were causally connected to the Plaintiff's protected conduct. *Piercy v. Maketa*, ___ F.3d ___, 2007 WL 901911 (10th Cir. Mar. 27, 2007) (causal connection can be shown by close temporal proximity between protected conduct and adverse action), *citing Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1179 (10th Cir. 1999) (six week delay between protected conduct and adverse action sufficient to permit inference of causation) *and O'Neal v. Ferguson Constr. Co.*, 237 F.3d 1248, 1253 (10th Cir. 2001). Accordingly, the Plaintiff is likely to succeed in establishing a *prima facie* case of retaliation.

The burden then shifts to the Defendants. Although the Court has yet to hear from the Defendants in opposition, the Plaintiff has attached a letter from the Defendants' counsel responding to her snow removal complaints that gives some indication as to what non-retaliatory

reason the Defendants might give for their decision. *Docket* # 2-4. Among other things, the letter states that on December 22, 2006, beginning at 2:00 a.m., the Plaintiff "repeatedly call[ed the Defendants'] answering service . . . demanding that a representative" from the Defendants call her back immediately to discuss the issue. As a result of the Plaintiff's demands, the letter contends, the answering service contacted the Defendants' property manager at "an unreasonable non-business hour." The letter further notes that, after additional discussions, the Plaintiff "continued to communicate hostilely" with the Defendants. A contention that it is the hostile tone and manner of the Plaintiff's complaints– not the content of the complaints themselves– that prompted the Defendants to refuse to renew her lease might be sufficient to carry the Defendants' burden of articulating a non-retaliatory reason. *See e.g. Cavalieri-Conway*, 992 F.Supp. at 1005-06 (proffer of tenant's "bizarre and usatisfiably demanding behavior" was sufficient to meet landlord's burden of identifying legitimate non-discriminatory reason for non-renewal of lease).

Assuming that the Defendants would contend that it was the offensive tone and manner of the Plaintiff's communications as being the legitimate, non-retaliatory reason for the Defendants electing not to renew the Plaintiff's lease, the burden would then be on the Plaintiff to show that explanation to be pretextual. In some respects, the Plaintiff's affidavit confirms the Defendants' statements: the Plaintiff admits that "while I was experiencing insomnia," she did indeed call the Defendants' answering service at 2:00 a.m. and complain about snow removal, *Docket* # 2-3, ¶ 15, and that she received a return call from the Defendants' property manager as a result. In all other respects, the Plaintiff's affidavit is silent as to the tone and manner of her discussions with the Defendants. Because the Plaintiff's affidavit does not directly refute the non-discriminatory

6

reason likely to be proffered by the Defendants, the Court cannot find, on the record currently before it, that the Plaintiff would be likely to succeed on the merits of her retaliation claim.

### C. Irreparable injury

The Court further finds that the Plaintiff has failed to make a showing that she faces an immediate risk of irreparable harm. Although the Plaintiff's lease has expired by its terms and the Defendants do not intend to renew it, the parties' lease specifically provides for month to month holdover and that "[t]he owner may only evict the tenant by a court action." *Docket* # 2-8 at 6, ¶ e. There is no indication in the record that the Defendants have yet commenced a state court action seeking the Plaintiff's eviction.

Under Colorado law, an action seeking the Plaintiff's eviction must be commenced pursuant to C.R.S. § 13-40-110, and the summons must provide that the Plaintiff shall have at least five business days to answer. C.R.S. § 13-40-101(1). Thus, the mere fact that the Defendants have demanded, via letter, that the Plaintiff vacate the apartment does not suggest that the Plaintiff's actual eviction is imminent. Indeed, according to the terms of the lease, unless and until the Defendants actually commence an action seeking the Plaintiff's eviction she can hold over on a month to month basis.

Accordingly, because the Court finds that the Plaintiff has not demonstrated a likelihood of success on the merits or a risk of irreparable harm that is imminent, her request for a temporary restraining order is denied.

### D. Hearing to set preliminary injunction hearing

7

The Court will conduct a 15-minute, <u>non-evidentiary</u> hearing on **Thursday, April 12, 2007** at **1:30 p.m.** for the purpose of addressing the following: (i) whether an evidentiary hearing on the Plaintiff's request for a preliminary injunction is necessary; (ii) if so, how much time is necessary for such a hearing; (iii) when such a hearing should be set; (iv) whether the Plaintiff's retaliation and failure to accommodate claims should be bifurcated, and whether trial on the merits of the retaliation claim be advanced and consolidated with the hearing on the preliminary injunction motion pursuant to Fed. R. Civ. P. 65(a)(2). In anticipation of this hearing, the Defendants shall file a response to the Plaintiffs' motion for preliminary injunction on or before **Tuesday, April 10, 2007**.

Dated this 4th day of April, 2007

BY THE COURT:

*[signature: Marcia S. Krieger]*

Marcia S. Krieger
United States District Judge